# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**BRANDON WEHMEYER**                    **CASE NO. 6:21-CV-01163**

**VERSUS**                              **JUDGE ROBERT R. SUMMERHAYS**

**A T & T CORP ET AL**                  **MAGISTRATE JUDGE DAVID J. AYO**

## MEMORANDUM RULING

Presently before the Court is the Motion for Summary Judgment [ECF No. 51] filed by defendant Standard Wireless Group, LLC ("Standard Wireless"). Plaintiff Brandon Wehmeyer opposes the Motion. A hearing on the matter was held on July 26, 2023.

## I.
### BACKGROUND

Wehmeyer was employed as a cell phone tower maintenance technician/rigger and alleges that he was injured while performing maintenance work on a cell tower in Ville Plate, Louisiana, on October 17, 2019.[1] Wehmeyer alleges that he was "struck repeatedly by the load line cable due to a rigging failure caused by the negligence of one or more defendants," including Standard Wireless.[2] Wehmeyer alleges that he suffered physical injuries from the rigging failure, including broken bones in his hip and pelvis, extensive facial fractures, a closed head injury, cuts and skin abrasions, and injuries to his neck and back.[3] On October 13, 2020, Wehmeyer commenced this case in 13th Judicial District Court, Evangeline Parish, Louisiana.[4] Zurich American Insurance Company of Illinois ("Zurich") filed a Petition for Intervention on October 15, 2020.[5] In the Petition for Intervention, Zurich alleges that it issued a workers' compensation insurance policy to

---

[1] ECF No. 1-1 at 8 (Petition) at ¶¶ 1, 3-4.
[2] Id.
[3] Id. at ¶ 7.
[4] Id.
[5] ECF Doc. 1-1 at 19 (Petition for Intervention).

1

Standard Wireless and that Wehmeyer was employed by Standard Wireless on the date of the subject accident.[6] Zurich claims that it paid indemnity and medical benefits to and on behalf of Wehmeyer arising from the subject accident and pursuant to the Louisiana Workers' Compensation Act.[7]

Wehmeyer filed a workers' compensation claim—the Disputed Claim for Compensation Form ("Form 1008")—on May 5, 2020, with the Louisiana Office of Workers Compensation. In the present case, Wehmeyer alleges that he was performing contract work at the time of his injuries and was not employed by Standard Wireless.[8] In his Form 1008, however, he identified Standard Wireless as his employer.[9] Wehmeyer's Form 1008 mirrors the allegations in the present case. It states that he was injured on October 17, 2019[10]—the same date alleged in the present case—and alleges the same facts underpinning the claims in the present case: "[w]hile in the course and scope of his employment with the Employer, the Injured Employee suffered injuries to his face, left hip, and left wrist after he was crushed between a wire and a tower."[11] Standard Wireless contends that Wehmeyer's workers' compensation claim is based on the same accident and injuries at issue here.

The case was subsequently removed to this court pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction under 28 U.S.C. § 1332 on April 30, 2021. Wehmeyer settled the workers' compensation claim on February 11, 2022, and the parties executed a written settlement agreement.[12] The release in the settlement agreement states that:

> [Brandon Wehmeyer] forever releases and discharges Standard Wireless Group and Zurich American Insurance Company. . . from any and all past, present, and future claims . . . and any and all causes and rights of action whatsoever which he may or might have under . . . tort laws, and any and all other laws whatsoever, in any way

---

[6] *Id.* at ¶ 4.
[7] *Id.* at ¶ 5.
[8] *See* Exhibit A (Affidavit of Brandon Wehmeyer) attached to ECF No. 29.
[9] ECF Doc. 51 at 1 (Exhibit B, Disputed Claim for Compensation Form Filed with the Office of Workers' Compensation on Behalf of Brandon Wehmeyer).
[10] *Id.*
[11] *Id.*
[12] ECF No. 51, Exhibit C, Notarized Settlement Release, dated February 11, 2022.

resulting from the injuries claimed by Brandon Wehmeyer and any and all other accidents, incidents or injuries sustained by Brandon Wehmeyer in the past arising out of or occurring in the course of his employment with Standard Wireless Group.[13]

The release in the settlement agreement further states that Wehmeyer "declares and acknowledges that he fully understands all of his possible rights and remedies and that this instrument constitutes a full, final and complete release of Standard Wireless Group and Zurich American Insurance Company from any and all claims arising out of the aforesaid accident and injuries, and that he has executed this release freely and without duress, economic or otherwise."[14] In light of the settlement and release, Judge Anthony Palermo of the Louisiana Office of Workers' Compensation entered an order dismissing the workers' compensation case on March 8, 2022.[15] Judge Palermo ordered that the matter "be dismissed, with full prejudice to the rights of Brandon Wehmeyer."[16] Standard Wireless filed the present Motion for Summary Judgment, arguing that all claims against Standard Wireless in the instant action are barred by the settlement and res judicata.

## II.
### SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[17] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[19] As summarized by the Fifth Circuit:

---

[13] *Id.*, at pp. 2-3.
[14] *Id.*
[15] ECF No. 51-7.
[16] *Id.*
[17] Fed. R. Civ. P. 56(a).
[18] *Id.*
[19] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[20]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[21] "Credibility determinations are not part of the summary judgment analysis."[22] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[23]

## III.
### LAW AND ANALYSIS

LSA–R.S. 23:1032 provides that, with the exception of intentional acts, workers' compensation is the exclusive remedy available to an "employee or his dependent" for work-related injuries and illnesses.[24] Accordingly, separate tort actions against employers grounded on

---

[20] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

[21] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).

[22] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

[23] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[24] Specifically, the statute states:

> [T]he rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director,

work-related injuries are generally barred unless the injuries arose from intentional acts.[25] In the present case, Wehmeyer asserts tort claims against his employer, Standard Wireless, that are grounded on work-related injuries he suffered in the scope and course of his employment as a cell phone tower maintenance technician/rigger. These claims appear to fall squarely within LSA–R.S. 23:1032's exclusivity provision. Indeed, Wehmeyer availed himself of this exclusive remedy by filing a workers' compensation claim and entering into a settlement agreement releasing Standard Wireless. Under Louisiana law, Wehmeyer's claims in the present case would be barred under LSA–R.S. 23:1032 regardless of the parties' release or the res judicata effect of Judge Palermo's order. But the parties have not raised or briefed the effect of LSA–R.S. 23:1032 on Wehmeyer's attempt to assert independent tort claims against Standard Wireless.[26] Accordingly, the Court turns to Standard Wireless' argument that the settlement agreement and release bars Wehmeyer's claims.

---

stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease [emphasis supplied].

[25] *See Blevins v. Time Saver Stores, Inc.* (La.App. 5 Cir. 10/26/99).

[26] Wehmeyer filed an affidavit in opposition to the present Motion for Summary Judgment. In that affidavit, Wehmeyer states that he was never employed by Standard Wireless but was instead "self-employed." ECF No. 60-2 at ¶¶ 1-6. Wehmeyer is estopped from denying his employment relationship with Standard Wireless. Louisiana has adopted the doctrine of judicial estoppel, which is "an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Miller v. Conagra, Inc.*, 991 So.2d 445, 452 (La. 9/8/08) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). There are three requirements for the doctrine to apply: "(1) the party against whom judicial estoppel is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Gonsoulin v. Broussard*, 353 So. 3d 1044, 1047 (La. App. 3 Cir. 12/14/22).

Here, Wehmeyer asserted a position in his workers' compensation case—that his injuries occurred in the course and scope of his employment with Standard Wireless—that is inconsistent with the position he is now taking in the present case—that he was essentially an independent contractor. The workers' compensation judge relied on that prior representation in adopting Wehmeyer's workers' compensation settlement. And the evidence in the summary judgment record does not show that Wehmeyer acted inadvertently. Specifically, Wehmeyer's workers' compensation claim form states that his injuries occurred "[w]hile in the course and scope of his employment with [Standard Wireless] ..." ECF No. 51-5. The settlement agreement—which Wehmeyer signed and notarized—stated that "he has a claim against Standard Wireless Group and Zurich American Insurance Company for benefits under the Louisiana workers' compensation laws as a result of injuries that he allegedly *sustained in the course and scope of his employment* with Standard Wireless Group, LLC." ECF No. 51-6 (emphasis added). Finally, Wehmeyer accepted the benefits of his workers compensation settlement. Even more troubling, he seeks to retain these benefits, yet escape the restrictions of the release and continue with the present action seeking relief for the same work-related injuries.

Under the Louisiana Civil Code, "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."[27] Moreover, "[a] compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings."[28] This "writing requirement aims at avoiding litigation over what the terms of a settlement are."[29] "The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument."[30] Here, the settlement agreement and release were memorialized in a written document, signed and notarized by Wehmeyer.[31] The release clearly identifies "Standard Wireless Group and Zurich American Insurance Company" as the released parties, and defines the scope of the release as "*any and all causes and rights of action whatsoever* which [Wehmeyer] may or might have under . . . tort laws, and any and all other laws whatsoever... arising out of or occurring in the course of his employment with Standard Wireless Group."[32] The language of this release is not ambiguous and covers the claims at issue here.

Despite the unambiguous language of the release, Wehmeyer argues that he did not intend to release the tort claims against Standard Wireless when he executed the workers' compensation settlement agreement and relies on a line of Louisiana cases creating an exception to the "four corners" rule. In *Brown v. Drillers, Inc.*,[33] the Louisiana Supreme Court discussed this exception:

> The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and

---

[27] La. Civ. Code Art. 3071.
[28] La. Civ. Code Art. 3072.
[29] *Tucker v. Atterburg*, 409 So.2d 320, 322 (La. App. 4 Cir. 1981).
[30] *Chalmette Retail Ctr., L.L.C. v. Lafayette Ins. Co.*, 21 So. 3d 485, 492 (La. App. 4 Cir. 10/16/09), *writ denied,* 31 So. 3d 392 (La. 4/9/10),  and *writ denied,* 31 So. 3d 393 (La. 4/9/10).
[31] ECF No. 51-6.
[32] *Id.*, at pp. 2-3.
[33] 630 So.2d 741 (La. 1994).

extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument. Louisiana courts, however, have crafted a special exception to the extrinsic evidence rule for compromise agreements based on an *in pari materia* reading of LSA–C.C. Art. 3073's provision that a compromise extends only to those differences the parties' clearly comprehended and LSA–C.C. Art. 3079's provision that an error as to the subject matter in dispute is a ground to rescind a compromise.

*Moak*, supra stands for the proposition that when a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Following *Moak*, a long line of jurisprudence holds that a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release. Under that jurisprudential rule, the parties to a release instrument are permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal.

Louisiana courts, however, have tempered that jurisprudential rule, recognizing that absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain intent. Utilizing a case-by-case, factual analysis, Louisiana courts have limited the rule's application to cases in which **substantiating evidence** is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. When the factual circumstances surrounding the execution of the release instrument do not fall within either of the above categories, Louisiana courts, applying LSA–C.C. Art. 2046's general rule of construction, have not hesitated to confine their analysis to the four corners of the instrument. When, as in that instance, a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and thus summary judgment is appropriate.[34]

Wehmeyer contends that he did not intend to release his tort claims against Standard Wireless when he signed the workers' compensation settlement and agreement despite the language of the agreement releasing "any and all causes and rights of action whatsoever" against Standard Wireless. The only evidence in the record in this regard is Wehmeyer's affidavit stating that he did not intend to release these claims.[35] Specifically, Wehmeyer states that he filed two separate actions against Standard Wireless—the workers' compensation action and the present tort suit—

---

[34] *Id.*, at 748-749 (internal citations omitted) (emphasis added).
[35] ECF No. 60-2.

and that "[i]t was his understanding that this settlement only resolved his workers' compensation claim, and not his negligence/tort claims for which he is being represented" by counsel in the present case.[36] He further states that he was represented by separate counsel in the workers' compensation case, but that "he was never advised … that the workers compensation settlement … would result in the release of any claims he might have against Standard Wireless" in the present case.[37] On the other hand, Wehmeyer does not state that counsel provided advice or other information that led him to believe that the settlement did not include the claims in the present case. Nor does he state any facts providing "substantiating evidence" of his intent or that he was mistaken about the scope of the workers' compensation settlement and release.

Wehmeyer's affidavit testifying as to his state of mind is self-serving and unsupported. "[A]n affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue even if the affidavit is arguably self-serving."[38] However, a party's self-serving and unsupported affidavit testifying as to that party's state of mind will generally not defeat summary judgment where the evidence in the record is to the contrary.[39] Here, Wehmeyer offers no facts to support his conclusory statement that he did not understand the scope of the settlement agreement and release. Moreover, the summary judgment record contradicts Wehmeyer's affidavit. The language of the release—which Wehmeyer signed or notarized—makes no distinction between Wehmeyer's workers' compensation claims against Standard Wireless and the claims against Standard Wireless asserted in the present case.[40] The broad language of the release encompasses

---

[36] *Id.* at ¶ 11.

[37] *Id.* at ¶ 11.

[38] *C.R. Pittman Const. Co. v. National Fire Ins. Co. of Hartford*, 453 Fed. Appx. 443 (5th Cir. Oct. 24, 2011).

[39] *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported statement that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud.").

[40] Nor could it make this distinction under LSA–R.S. 23:1032, which bars Wehmeyer from asserting work-related tort claims against his employer outside the workers compensation system. To the extent that Wehmeyer asserts the defense of mistake, he is really claiming a mistake of law—that he can assert (and receive) worker compensation and

the claims asserted against Standard Wireless in the present case. Wehmeyer acknowledged "that he fully understands all of his possible rights and remedies and that this instrument constitutes a full, final and complete release of Standard Wireless Group and Zurich American Insurance Company from any and all claims arising out of the aforesaid accident and injuries, and that he has executed this release freely and without duress, economic or otherwise."[41] Critically, Wehmeyer was represented by counsel in connection with the workers' compensation settlement.[42] In sum, the summary judgment record does not create a genuine issue of material fact as to the exceptions set forth in *Brown v. Drillers, Inc.*. Accordingly, the Court grants Standard Wireless' Motion for Summary Judgment.

## IV.
### CONCLUSION

For the reasons stated herein, the Motion for Summary Judgment [ECF No. 51] is GRANTED and all claims asserted by Wehmeyer against Standard Wireless are DISMISSED.

THUS DONE in Chambers on this 21st day of August, 2023.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

still pursue tort claims against his employer despite the exclusivity provisions of LSA–R.S. 23:1032. A mistake of law is not grounds to avoid the terms of a contract.
[41] *Id.*
[42] ECF No. 60-2 at ¶ 9.